**Louis G. TATTER, Plaintiff,**

v.

**BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. 306; Harley Clyde, Pat Cochran, Geraldine Mead, Albert Pederson, Shirley Schmidt, Paul Shuster, Rodney Sletten, and Ernest Troxel, Individually and in their official capacity as members of the Board of Education of Independent School District No. 306, Defendants.**

No. Civ. 6–78–212.

United States District Court,
D. Minnesota,
Sixth Division.

June 13, 1980.

Douglas L. Skor, Briggs & Morgan, St. Paul, Minn., for plaintiff.

Ralph Smith, Smith, Carpenter, Petterson & Bailey, Bemidji, Minn., for defendants.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

This case was tried to the court in a two and one-half day trial on May 26–28. Plaintiff, formerly a superintendent of schools, alleges a cause of action under 42 U.S.C. § 1983 and several pendent state law claims. Specifically, plaintiff alleges that he had a reasonable expectation of re-employment with the defendant school district and therefore was entitled to a pretermination hearing. The state law claims are based on breach of an express or implied contract. Plaintiff seeks reinstatement, backpay and a hearing. The court denied plaintiff's motion for preliminary injunction on June 23, 1978 and denied cross motions for summary judgment on September 29, 1978.

The court finds for defendant and dismisses the action with prejudice.

Plaintiff, Louis Tatter, has been employed in the education field for more than 30 years, 15 of which he was employed as a superintendent. In August 1977 plaintiff was hired by Independent School District No. 306, LaPorte, Minnesota. The contract was for one year, it was entered into and signed by all parties at a meeting of the School Board in August 1977. The Board's refusal to renew that contract is at issue in this case.

In a meeting of January 9, 1978 the Board unanimously passed a resolution to "offer the three administrative positions, namely superintendent, high school principal and elementary principal, to our present administrative personnel respectively." (Plaintiff's Exhibit No. 1). On February 13 the Board passed a resolution establishing salaries for the administrative positions. *Id.* Plaintiff's salary was set at $21,000. *Id.*

The Board did not prepare a written contract for plaintiff. The evidence indicates and the court finds that the resolution extending the offer to plaintiff was brought at the behest of Mr. Tatter and that Mr. Tatter stated to the Board members and the Board members believed that the offer was not binding but was merely extended as an expression of confidence in the administrators. Plaintiff did not accept the offer at either the January 9 or February 13 meeting. He did, however, thank the Board for their action and later prepared a written contract for himself, and possibly also for the other two administrators. The contract(s) were standard form contract(s) which Mr. Tatter had used during his 30 years of employment. The form contract contained a term providing that the con-

tract would be effective "only after it has been authorized by the school board in appropriate action recorded in its minutes and executed by the parties." Those contracts were, however, not presented to the Board for the appropriate signatures.

Between January and May 1979 numerous disputes arose between Mr. Tatter and the Board. As a result of those disputes, the Board increasingly lost confidence in Mr. Tatter which occasioned a revocation of the offer. The February 13 resolution establishing salaries was rescinded on March 27 and the January 9 resolution extending offers was rescinded on April 20.

*42 U.S.C. § 1983*

■ Plaintiff argues that he had a property interest in his employment and was, therefore, entitled to a pretermination hearing. It is well established that plaintiff must establish a property or liberty interest to be entitled to a pretermination hearing and that whether a property interest exists must be determined by reference to state law. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 181 (1972).

■ Plaintiff was a probationary employee and therefore did not have a statutory right to a pretermination hearing, Minn. Stat. § 125.12; *Pearson v. Independent School District No. 716*, 290 Minn. 400, 188 N.W.2d 776 (1971), and since plaintiff was nontenured he had no property interest arising out of the tenure statute. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). The court finds, *infra*, that plaintiff had neither an express or implied contract for re-employment and plaintiff has not alleged nor introduced any evidence to show that plaintiff's "good name, reputation, honor or integrity" is at stake, or that termination was based on vindictive or maliciously inspired reports without basis in fact. *Setty v. Minnesota State College Board*, 305 Minn. 495, 235 N.W.2d 594 (1975).

■ Plaintiff's Section 1983 claim then rests on whether plaintiff had a "legitimate claim of entitlement," *Perry v. Sindermann*, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972), or "reasonable expectancy of re-employment." *Ferris v. Special School District No. 1*, 367 F.Supp. 459, 461 (D.Minn.1973); *Setty, supra.* To establish a property interest, plaintiff must show "more than a unilateral expectation" of continued employment. *Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709. A legitimate claim to or reasonable expectancy of re-employment must be based on some established rule, policy, contract term or similar understanding. *Sindermann, supra*, (established school policy based on official faculty guide which granted teachers *de facto* tenure created property interest); *Hawkins v. Board of Public Education in Wilmington*, 468 F.Supp. 201 (D.Del.1979) (established practice custom and usage not to terminate except for good cause created property interest).

On the facts of this case the court cannot find a legitimate claim of entitlement to or a reasonable expectation of re-employment. Plaintiff introduced no evidence showing an established custom or practice that the Board would continue employment of probationary employees. Nor has plaintiff, under these circumstances, established a reasonable expectation of re-employment. Upon inquiry from the court, plaintiff stated that he was quite familiar with the Minnesota statute requiring execution of a contract by the Board; that he had, for a number of years, used the standard form contract which expressly provided that the contract would be effective only if authorized by the Board, recorded in the Board minutes and executed by the parties; and that he had previously always followed the statutory procedure by obtaining the appropriate authorization of the Board and formal execution of the contract by the Board. Moreover, the court finds that plaintiff was well aware of the Board's growing dissatisfaction with his performance and that the resolutions extending offers and establishing salaries were coaxed out of the Board by plaintiff. Under those circumstances plaintiff has, at best, established a unilateral expectation of continued employment.

*Contract Claim*

 Plaintiff alleges, in addition, that he had a binding express or implied contract for the following school year. Minnesota Statute 125.12 provides that all teachers' contracts shall be in writing "signed by the teacher[s] and by the chairman and clerk." Assuming *arguendo* that section 125.12 is directory rather than mandatory, as plaintiff argues, the court holds that plaintiff did not accept the offer prior to its revocation. It is a fundamental principle of contract law that an offer must be accepted before a contract, whether express or implied, is formed. 4 Dunnel Minn. Digest 2d Contracts §§ 3.03, 3.04 (3d ed. 1977), and that an acceptance must be made in definite and unequivocal terms. *Minar v. Skoog*, 235 Minn. 262, 50 N.W.2d 300 (1951). In this case plaintiff did not accept the offer either at the January 9 meeting, when the offer was extended, or at the January 13 meeting, when salaries were established. The only expression which might be construed as an acceptance is a statement made in a confidential memorandum dated March 20, 1978. The confidential memorandum was attached to a 3 page, single spaced, agenda. The alleged acceptance is one of several statements in paragraph 5 of the confidential memorandum. Paragraph 5 provides, *inter alia,*

> This confusion [referring to the correct procedural manner to revoke the February 13 resolution establishing salaries] must be settled soon as the following areas and/or situations are effected:
>
> \* \* \* \* \* \*
>
> 2. *Administrator Contracts were made out and signed prior to the March 13th meeting.*

(Emphasis added.) Plaintiff argues that the emphasized portion above constitutes an acceptance. None of the Board members who testified recall having read the alleged acceptance and each of those Board members testified that he first learned that plaintiff had prepared the contracts when the suit was filed.

 The court holds that the mere statement that the administrator contracts were made out and signed is not sufficiently definite and unequivocal so as to constitute an acceptance. That is particularly true where, as here, the alleged acceptance is hidden in the midst of a five page memorandum. Absent an acceptance, there could be no contract, express or implied. Moreover, plaintiff knew that the Board did not intend to be bound by the January 9 resolution. Plaintiff in fact elicited that resolution upon the condition that the "offer" was not to be binding but was simply an expression of confidence in the administrators. When the offeree is aware that the offeror does not intend to be bound by an instrument, no contract is formed. *Hamilton v. Boyce*, 234 Minn. 290, 48 N.W.2d 172 (1951); *Tyra v. Cheney*, 129 Minn. 428, 152 N.W. 835 (1915); Restatement, Contracts § 71(c).

The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

For reasons stated herein the court finds for defendant.