Louis G. TATTER, Appellant,

v.

BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. 306; Harley Clyde, Pat Cochran, Geraldine Mead, Albert Pederson, Shirley Schmidt, Paul Shuster, Rodney Sletten and Ernest Troxel, individually and in their official capacity as members of the Board of Education of Independent School District No. 306, Appellees.

No. 80–1612.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1981.

Decided June 30, 1981.

Briggs & Morgan, St. Paul, Minn. by Douglas L. Skor, Alan H. Maclin (argued), St. Paul, Minn., for appellant.

Smith, Carpenter, Petterson & Bailey by Ralph T. Smith (argued), Bemidji, Minn., for appellees.

Before LAY, Chief Judge, ROSS, Circuit Judge, and BECKER,* Senior District Judge.

* William H. Becker, Senior District Judge, Western District of Missouri, sitting by designation.

PER CURIAM.

Louis G. Tatter appeals from an adverse judgment in a suit brought by him under 42 U.S.C. § 1983 and several pendent state law claims. The district court, The Honorable Edward J. Devitt, held that Tatter had no property interest that is protected by the due process clause.[1] We affirm.

In August 1977 Tatter, an experienced school administrator, was hired by the Board of Education as superintendent for School District No. 306 in LaPorte, Minnesota. Tatter and the Board signed a one-year contract that expired in August 1978. During that year, Tatter was a probationary employee.

In its January 9, 1978, meeting, the Board of Education, at Tatter's behest, unanimously passed a resolution to "offer the three administrative positions, namely superintendent, high school principal and elementary principal, to [its] present administrative personnel respectively" for the 1978–79 school year. The district court found that Tatter told the Board and the Board believed that the January 9 resolution was merely an expression of confidence in the administrators and was not binding on the Board. On February 13, 1978, the Board passed a resolution setting the salaries for the three administrative positions. After the February 13 meeting, Tatter prepared written contracts for himself and the other administrators. He signed his contract but never presented it to the Board of Education nor was it ever signed by any Board member.

Several disputes between Tatter and the Board arose between January and May 1978. As a result, the Board lost confidence in Tatter and rescinded the February 13 resolution on March 27. On April 20, the January 9 resolution extending offers was rescinded and Tatter was not rehired at the end of the one-year contract for the 1977–78 school year.[2]

 Tatter contends that the January 9 and February 13 resolutions constituted an offer of employment for the 1978–79 school year which he argues he accepted. We agree with the district court that Tatter made no valid acceptance of the January 9 "offer," if in fact it was one, prior to its rescission at the April 20 Board of Education meeting. Thus, no employment contract for the 1978–79 school year was ever formed.

The district court correctly concluded that Tatter did not have a reasonable expectation of reemployment. As a probationary employee, Tatter had no statutory right to continued employment and no such right was granted in his original contract. The district court, therefore, correctly held that Tatter had no reasonable expectation of reemployment and, thus, no property interest that is protected by the due process clause. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The judgment of the district court is affirmed.

---

1. *Tatter v. Board of Education*, 490 F.Supp. 494 (D. Minn. 1980).

2. On April 20, 1978, the Board passed a resolution extending a new offer of employment to

the high school principal. Likewise, the Board extended an offer of reemployment to the elementary principal on May 8, 1978.